UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN SHUTLER, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 07 CV 6553 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| LAKE FOREST COUNTRY DAY SCHOOL, | ) | |
|     Defendant. | ) | |

**MEMORANDUM AND ORDER**

A jury found for the defendant Lake Forest Country Day School on plaintiff Jean Shutler's claims that the school did not renew her contract because of her age. Before the court is Shutler's motion for a new trial, arguing that improperly admitted evidence and argument denied her a fair trial. For the reasons that follow, her motion is denied.

**ANALYSIS**

Under Federal Rule of Civil Procedure 59(a), the court has discretion to order a new trial for any of the following reasons: (1) the verdict was against the weight of the evidence; (2) the award of damages was excessive; or (3) for some other reason the trial was not fair to the party moving for a new trial. *See Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). Shutler contends the trial was not fair to her for the following reasons:

(1) the defendant's reference during trial to an irrelevant provision of Shutler's employment contract could have led jurors to conclude that Shutler had waived her right to assert a claim of age discrimination;

(2) evidence of favorable letters written by parents in Shutler's personnel file were excluded, even though head of school Michael Robinson testified that he had reviewed the personnel file when deciding not to renew Shutler's contract;

(3)      the court allowed head of the lower school Sally Bullard to testify at trial that she relayed parents' complaints about Shutler to Robinson before his decision not to renew her contract, contradicting her prior deposition testimony that she had not relayed parents' complaints to Robinson;

(4)      the court allowed Shutler's coworkers Eileen Scallan, Lynn Buettell and Sally Bullard to testify about their unfavorable impressions of Shutler even though Robinson did not testify that he relied on their impressions in making his decision; and

(5)      the court allowed defense counsel to ask leading questions while cross-examining Robinson, a witness identified with the defendant whom the plaintiff had called as an adverse witness.

The court will address each of the bases of Shutler's motion for a new trial in turn.

**I.    Evidence of Employment Contract**

First, Shutler contends that she did not receive a fair trial because during cross-examination, defense counsel asked her about terms in her employment contract that would have led jurors to believe that she had waived her right to bring a claim of age discrimination. Plaintiff's counsel objected to any questions about the employment contract, but the court overruled the objection because plaintiff's counsel had first questioned Shutler about the contract during direct examination. Defense counsel then asked the following question:

Q:      Ms. Shutler, talking about paragraph number 8, the nonrenewal paragraph it states:

> It is expressly understood and agreed by and between the parties to this contract that neither the instructor . . .

—and that would be you, true?

A:      Yes.

> Q: . . . nor the day school owes any subsequent contractual obligation or service to the other after the terminal date of this one-year contract.
>
> True?
>
> A: That's what it says.

Trial Transcript, January 5, 2011, at 129 (attached as A31 to Motion for New Trial [Docket #55]). After the exchange quoted above, the court sustained plaintiff's counsel's objection on the grounds of relevancy, because Shutler's claim was one for age discrimination, not breach of contract.

Shutler contends that the questions and answers elicited before the court sustained Shutler's objection would have allowed jurors to conclude that, under the terms of her employment contract, Shutler had waived her right to bring a claim of age discrimination. However, the term of the contract quoted by defense counsel specifically states that after the contract terminates, the parties no longer owe one another *contractual* obligations. It does purport to waive other rights, such as the statutory right to be free from illegal discrimination.

In addition, the jury instructions directed jurors to find in Shutler's favor if she showed that the "defendant did not renew plaintiff's teaching contract because of her age, or defendant terminated plaintiff's employment because of her age." Jury Instructions (attached as Exhibit A to Lake Forest Country Day School's Response [163-1]). The instructions contained no language that would have allowed jurors to conclude that Shutler had waived her right to her claim of age discrimination. *See Pickett v. Sheridan Health Care Center*, 610 F.3d 434, 446 (7th Cir. 2010) (jurors are presumed to have followed their instructions).

The only mention of the contract containing a waiver of the right not to be discriminated against came from plaintiff's counsel during a speaking objection:

> MR. THEOBALD: The claim before the Court is a violation of the Age Discrimination in Employment Act. No one can waive their rights under the discrimination laws to sexual harassment, age discrimination, or racial discrimination in a contract. So I don't know where this is all going.

Trial Transcript, January 5, 2011, at 124-25 (attached as A26-27 to Motion for New Trial [Docket #55]). Shutler has cited no other instance where the concept of waiver was ever suggested to jurors.

Because the contractual term quoted during trial did not contain a waiver provision regarding discrimination claims, and because jurors were not instructed that Shutler could have waived her right to prevail on such a claim, Shutler has failed to identify any grounds for finding that references to the contractual term rendered her trial unfair.

## II. FAVORABLE LETTERS

Second, Shutler contends that her trial was unfair because the court excluded evidence of favorable letters from parents in the personnel file Robinson reviewed before terminating her. The court had earlier denied the defendant's motion for summary judgment based in part upon its determination that favorable letters from parents could be viewed as evidence that Robinson's proffered reasons for terminating her (which included parental complaints) were pretext. At trial the court sustained the defendant's objection to questions put to Shutler about the favorable letters in her personnel file, but did so without prejudice to plaintiff's counsel's asking about the letters later. Plaintiff's counsel did indeed ask about parents' favorable letters while cross-

examining Robinson. Defense counsel again objected, but the court overruled the objection, allowing plaintiff's counsel to question Robinson on whether the favorable letters were in Shutler's personnel file that he reviewed prior to terminating her. The court, however, did not permit plaintiff's counsel to ask Robinson to read each letter aloud. Plaintiff's counsel also questioned Sally Bullard about the positive letters, and Bullard read portions of one aloud. *See* Trial Transcript of January 7, 2011 at 129-131 (attached as Exhibit G to Response [163-1]).

To obtain a new trial based on an erroneous evidentiary ruling, the movant must show that the erroneous ruling affected "a substantial right of the party." Fed. R. Evid. 103(a). However, an erroneous ruling is considered harmless if it did not affect the outcome of the trial and, therefore, did not affect a substantial right of the party. *See Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 942 (7th Cir. 2001).

Although the court did not allow plaintiff's counsel to question Shutler about the favorable letters, it did permit counsel to question Robinson about whether the favorable letters were in the personnel file he reviewed before terminating Shutler. The relevance of the letters turned on whether Robinson reviewed them before terminating Shutler, not whether Shutler herself was aware of the letters. In addition, Bullard testified about the existence of the letters and read one aloud. As a result of plaintiff's counsel's examination of Robinson and Bullard, jurors learned of the letters' existence, that the letters spoke favorably of Shutler, and that Robinson reviewed the letters before terminating Shutler. Because jurors learned about the letters and Robinson's review of them, Shutler has not shown that the court's initial ruling sustaining defense counsel's objection to questioning Shutler about the letters, even if erroneous, affected the outcome of the trial.

III. **PARENTAL COMPLAINTS**

Next, Shutler contends that she did not receive a fair trial because the court overruled her objection to testimony from head of lower school Sally Bullard that contradicted statements Bullard made earlier during her deposition. Specifically, Shutler contends that during her deposition, Bullard could not recall whether she had passed along to Robinson complaints made by parents about Shutler, but at trial testified that she had passed along the complaints.

The proper method of addressing trial testimony that contradicts prior deposition testimony is not by excluding the trial testimony but, rather by impeaching the witness with the inconsistency. "Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted. . . . If a [] witness makes a statement that contradicts a position previously taken in a [] deposition, then [opposing counsel] may impeach that witness with the prior inconsistent statement." *W.R. Grace & Co. v. Viskase*, No. 90 CV 5383, 1991 WL 211647, at *2 (N.D. Ill. Oct. 15, 1991).

Upon her trial testimony that at "some point I would have let [Robinson] know about parent complaints," plaintiff's counsel objected on the basis that her trial testimony contradicted her deposition testimony. The court overruled the objection because the proper method of addressing prior inconsistent statements is not through the exclusion of trial testimony but, rather, through impeachment:

| | |
|---|---|
| MR. THEOBALD: | Your Honor, my objection—I'm sorry. My objection is that Ms. Bullard gave a completely different answer in her deposition. |
| THE COURT: | Well, you'll be able to bring that out. |

> MR. THEOBALD: Well, I know, but she said she never talked to Mr. Robinson.
>
> THE COURT: Counsel, you're a trial lawyer. You understand what to do.

Trial Transcript of January 10, 2011 at 95 (attached as A117 to Motion for New Trial [Docket #55]). Plaintiff's counsel then proceeded to impeach Bullard during his cross-examination when he asked about her trial testimony that she passed the complaints along to Robinson versus her deposition testimony that she could not remember whether she had passed along the complaints. Jurors heard both of Bullard's accounts of what had occurred, and the decision whether to believe either account rested with them.

The court did not err when it overruled Shutler's objection to Bullard's trial testimony, and therefore the court's ruling on the objection is not grounds for a new trial.

### IV.  COWORKERS' IMPRESSIONS

Next, Shutler argues that she is entitled to a new trial because the court allowed former coworkers to testify about their unfavorable impressions of her. The court overruled Shutler's objections to the testimony, in which she argued that coworkers' impressions of her were not relevant because there was no evidence that their impressions were ever communicated to the decisionmaker, Robinson.

Shutler's argument mischaracterizes the evidence presented at trial. In contrast to Shutler's argument that no evidence was presented that coworkers' impressions were communicated to Robinson, both Robinson and Bullard testified that Bullard passed along the information. Specifically, Bullard testified that before Shutler's termination, she told Robinson about the concerns expressed by Lynn Beuttell and Eileen Scallan:

Page 7

> Q: What information did you provide to Mr. Robinson prior to March 12th of 2007 about what you had learned from your curriculum coordinators?
>
> . . .
>
> A: I conveyed that both Lynn Beuttell and Eileen Scallan, who had been working with Jean longer than I directly, had great frustration with the fact that, even though they had tried to present new ways of doing things, that they had tried to help her understand that we were moving in a different direction, certainly in terms of sounds and words and foundational skills and literacy, and Lynn Beuttell trying to help them, the kindergarten, understand how she wanted the different strains of social studies to be presented in a class, how could they find ways to take some of the curriculum, they were already using it, and infuse it with the social studies standards that we were trying to promote, how could they develop relationships between the integration between literacy and social studies; and they were enormously frustrated, both of them, with the fact that no matter what they did or what they said, there was either filibustering or an outright no.

Trial Transcript of January 10, 2011 at 104 (attached as Exhibit H to Response [163-1]).

Robinson corroborated Bullard's testimony about the information passed onto Robinson:

> A: Sally [Bullard] cited the lack of collaboration between the two senior kindergarten classrooms.
>
> She cited the frustration that she experienced at meetings with Jean.
>
> She cited the general cold affect and rigidity to the classroom.
>
> And she referenced the frustration that Eileen Scallan, the language arts coordinator, felt with Jean in terms of implementing the language arts curriculum.
>
> Sally also referenced frustration with Jean's communication with parents, her tone in communicating with parents.

Trial Transcript of January 6, 2011 at 52 (attached as Exhibit E to Response [163-1]).

Information known to the decisionmaker prior to an employee's termination is relevant to whether the decisionmaker terminated the employee for a nondiscriminatory reason. *See Dvorak*

*v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002) (employee's termination was not improper where decisionmaker believed information received that the employee misused a computer, even if that information turned out to be wrong). As a result, information relayed to Robinson about Shutler's performance was relevant to whether he fired her based on her performance as opposed to her age.

Accordingly, the court's ruling allowing testimony about coworkers unfavorable impressions of Shutler that were passed on to Robinson is not grounds for granting Shutler a new trial.

## V.     LEADING QUESTIONS

Finally, Shutler contends that she was denied a fair trial because the court overruled her objections to defense counsel's use of leading questions while cross-examining Michael Robinson. Plaintiff's counsel called Robinson as a hostile witness because, as head of school, he was a witness identified with defendant Lake Forest Country Day School.

A question is leading if it suggests the answer sought. *See United States v. Watson*, 871 F. Supp. 988, 1004 (N.D. Ill. 1994). Under Federal Rule of Evidence 611(c), an attorney may interrogate a witness through the use of leading questions under two situations. First, leading questions may be used with a witness identified with the adverse party, as plaintiff's counsel did with Robinson. Leading questions may ordinarily also be used on cross-examination, except Rule 611(c) permits a court to "deny[] the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent." Fed. R. Evid. 611 Advisory Committee Notes. Ultimately, the mode of interrogating witnesses is left to the discretion of the

trial court, a discretion it is entitled to exercise "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a); *see also United States v. Boling*, — F.3d —, No. 09-3479, 2011 WL 1990530, at *7 (N.D. Ill. May 24, 2011).

Shutler contends that the district court abused its discretion by failing to exercise its ability to deny defense counsel the use of leading questions during the cross-examination of Robinson. In support she has identified examples of questions she contends amounted to "spoon feeding testimony through Mr. Robinson on critical areas," such as the following exchange:

> Q: Did part of Sally Bullard's job duties as head of lower school include giving you information concerning her observations of the activities in the lower school?
>
> A: Yes.
>
> Q: And that would include her observations—giving you information regarding her observations in the early childhood center?
>
> A: Yes.

Trial Transcript, January 6, 2011, at 49. However, the topic of Bullard's job duties had already been covered by plaintiff's counsel during his direct examination of Robinson, which included questions about her duties as head of the lower school, including the early childhood center. Plaintiff's counsel had also already elicited testimony from Robinson that he consulted with Bullard on personnel matters affecting the lower school. Thus, rather than spoon-feeding, the questions merely built upon testimony already elicited.

Likewise, Shutler contends that in the following exchange, defense counsel spoon-fed an answer to Robinson on a critical issue, specifically, the resume of a rejected job applicant on which Robinson had written "Over 60:"

Q: So that was a note to me or to some other attorney in my law firm?

A: Yes.

Shutler argues that through the question, counsel sought to minimize the impact of Robinson's notation, which Shutler contends is evidence that he rejected older applicants, by suggesting to Robinson that it was merely a note to counsel. However, immediately preceding the question and answer Shutler quoted, Robinson volunteered that the notation was to his attorney:

Q: And we showed you Exhibit 39, which was the schedule for Betsy Wiedemann, where you had handwritten "over 60," correct?

A: Yes.

Q: Exactly when did you write, hand-write, that "over 60" notation on that document?

A: I wrote that in the spring or summer of 2008 as a notation to you as part of the discovery process in this lawsuit.

Trial Transcript, January 6, 2011, at 71. Thus, only by taking the question and answer identified by Shutler out of context does defense counsel appear to be leading Robinson's answer.

The questions about which Shutler complains do not appear to be attempts to spoon-feed answers to the witness but, rather, merely restate testimony previously elicited or seek elaboration upon that testimony. *See Gell v. Town of Aulander*, 252 F.R.D. 297, 307-08 (E.D.N.C. 2008) (counsel's use of "leading questions [that were] asked primarily upon the basis of previous trial testimony and interview notes" did not violate Federal Rule of Evidence 611(a)).

Thus, to the extent any of the quoted questions can be viewed as leading, the court was within its discretion to allow them in order to "make the interrogation and presentation effective for the ascertainment of the truth," and to "avoid [the] needless consumption of time." *See* Fed. R. Evid. 611(a). Accordingly, defense counsel's questions to Robinson do not provide a basis upon which Shutler is entitled to a new trial.

## CONCLUSION

For the reasons stated, Shutler's motion for a new trial [155] is denied.

ENTER:

DATE: September 9, 2011

*Blanche M. Manning*
Blanche M. Manning
United States District Judge